## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, THE CHICAGO )
LABORERS' DISTRICT COUNCIL RETIREE )
HEALTH AND WELFARE FUND and )
CATHERINE WENSKUS, Assistant )
Administrator of the Funds, )
               Plaintiffs, )     **Case No. 17 C 7945**
    v. )
                            )     **Judge Gettleman**
De GRAF CONCRETE CONSTRUCTION, )
INC., an Illinois corporation, and MICHAEL )
PIRRON, individually )
            Defendants. )

## MOTION TO REINSTATE AND CONFESS JUDGMENT

NOW COME Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the

Health and Welfare Department of the Construction and General Laborers' District Council of

Chicago and Vicinity and Catherine Wenskus, Administrator of the Funds (hereinafter

collectively "Funds"), by and through their attorney, G. Ryan Liska, and hereby move this Court

to Reinstate and Confess Judgment on the settlement Installment Note entered into by the parties

in the above referenced matter. In support of this Motion, Plaintiffs state as follows:

    1.     On November 3, 2017 the Funds filed a Complaint against De Graf Concrete

Construction, Inc. and Michael Pirron (collectively "Defendants") as a result of the Defendants

failure to comply with the terms of an Installment Agreement.

    2.     On January 23, 2018 the Funds and Defendants resolved this matter when the

parties entered into an Installment Note and Guaranty of Payment Indemnification wherein the

Defendants agreed to pay all amounts prayed for in the Funds' Complaint. A true and accurate copy of the Installment Note is attached as Exhibit 1 and Guaranty of Payment Indemnification is attached hereto as Exhibit 2.

3.      As a result of the Parties settlement, the Parties entered into an Agreed Stipulation to Dismiss and the Court subsequently entered a Minute Order in which the Court retained jurisdiction through February 18, 2020 to enforce the Installment Note agreement. (A true and accurate copy of the Agreed Stipulation to Dismiss and this Court's January 25, 2018 Minute Order are attached hereto as Exhibit 3.

4.      The Installment Note and Guaranty required the Defendants to pay $996,398.70 to the Funds over the course of twenty-four (24) months with the first payment commencing on March 1, 2018 and the final payment coming due on February 1, 2020. In addition to making timely payments, the Installment Note was conditioned upon Defendants remaining current on its obligations to the Funds and Union including the timely submission and payment of monthly fringe benefit reports. (See Exhibit 1 Installment Note, Paragraph 9 and Exhibit 2 Guaranty, Paragraph 1).

4.      The terms of the Collective Bargaining Agreement and Trust Agreements required Defendants to submit contributions and to forward the appropriate Union dues by the 10th day following the month in which the work was performed. The Collective Bargaining Agreement also provides a thirty (30) day grace period which allows employers additional time to submit reports before it will be assessed a liquidated damages penalty.

5.      Under the terms and conditions of the Installment Note, Collective Bargaining Agreement and Trust Agreements, Defendants were to submit its December 2017 monthly

reports on or before February 10, 2018. However, Defendants failed to do so and as a result defaulted on the terms of the Installment Note and Guaranty. (See Joseph Gilleran Affidavit attached as Exhibit 4.

7.      Paragraph 8 of the Installment Note provides "in the event the Company fails to timely make any payments described in this Note, all amounts described in paragraph 1 [of the Note] herein shall immediately become due on the 10th day following the date on which payment should have been received by the Funds under the terms of this Note."

8.      Likewise, paragraph 6 of the Guaranty provides as follows: "In the event that payments under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds." The Guaranty also provides at paragraph 13: "The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default of any payment due under this Guaranty, and to confess judgment against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid thereon . . . . including reasonable attorney fees."

9.      On February 19, 2018 the Funds provided a written notice of default to the Defendants which set forth the reason for the default and further requested that the defaulted be cured within 10 business day of the written notice of default. (A true and accurate copy of the written notice of default which was sent via email and U.S. Mail is attached hereto as Exhibit 5). Defendants failed to cure the default. (See Gilleran Affidavit, ¶ 3 ).

10.     By virtue of not remaining current on its monthly obligations and failing to cure the default, Defendants are in default of the terms and conditions of the Installment Note and Guaranty. Allowing for all just due credits, Defendants owe $943,023.84.

WHEREFORE, the Funds respectfully request that this Court grant its Motion to Reinstate and Confess Judgment and:

A. Enter judgment jointly and severely in favor of the Funds and against Defendants De Graf Concrete Construction, Inc. and Michael Pirron in the amount of $943,023.84 plus $500.00 which represents Funds' attorney fees and expenses in enforcing Note and moving to reinstate this case;

B. Order Defendants to pay post judgment interest on the judgment amount until fully paid to the Funds; and

C. For any other relief deemed just inequitable.

Respectfully submitted,

March 5, 2018                              Laborers' Pension Fund, et al.
                                          By: /s/ G. Ryan Liska


Office of Fund Counsel
Laborers' Pension and Welfare Funds
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

## CERTIFICATE OF SERVICE

The undersigned certifies that she caused a copy of the foregoing Motion to Reinstate and Confess Judgment to be served upon the following persons via the U.S. Mail on this 5th day of March, 2018.

De Graf Concrete Construction, Inc.
c/o Michael G. Pirron, Registered Agent,
and Michael G. Pirron, individually
300 Alderman Ave.
Wheeling, IL 60090

/s/ G. Ryan Liska

# INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and De Graf Concrete Construction, Inc. (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the balance of prior note covering August 2016, December 2016 through February 2017 as well as monthly contributions that become due during the pendency of the first note for the months of August through October 2017. The Parties now wish to enter into this Note arrangement covering all the aforementioned liabilities plus liquidated damages, accumulated liquidated damages, interest, attorney fees and costs that the Parties admit is due and owing.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the balance of prior note covering August 2016, December 2016 through February 2017 as well as dues contributions that become due during the pendency of the first note for the months of August through October 2017. The Parties now wish to enter into this Note arrangement covering all the aforementioned liabilities plus liquidated damages, accumulated liquidated damages, interest, attorney fees and costs that the Parties admit is due and owing.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds,

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $357,763.20 to the Health and Welfare Fund (comprised of $261,841.03 in delinquent contributions, $52,984.71 in liquidated damages, $968.66 in attorney's fees and costs and $41,968.80 in interest) (based on an interest rate of 12%). The Company will pay $155,448.72 to the Retiree Health and Welfare Fund (comprised of $112,938.06 in delinquent contributions, $23,353.33 in liquidated damages, $940.17 in attorney's fees and costs and $18,217.16 in interest). The Company will also pay $429,811.92 to the Pension Fund (comprised of $314,491.24 in delinquent contributions, $63,884.62 in liquidated damages, $940.17 in attorney's fees and costs and $50,495.89 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 4 and 5.

2. The Company will also pay $11,285.64 to the Training Fund (comprised of $9,234.50 in delinquent contributions, $1,846.90 in liquidated damages and $204.24 in interest), $1,719.92 to the CCA Fund (comprised of $1,532.84 in delinquent contributions, $153.28 in liquidated damages and $33.80 in interest), $1,504.93 to the LECET Fund (comprised of $1,341.24 in delinquent contributions, $134.12 in liquidated damages and $29.57 in interest), $3,654.84 to the LDCMC Fund (comprised of $3,257.29 in delinquent contributions, $325.73 in liquidated damages and $71.82 in interest) and $35,209.53 in union dues (comprised of $30,641.69 in delinquent contributions and $4,567.84 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed along with the amounts due in paragraph 5.

3. The Company will also pay the Funds or the sum of $2,849.00 representing attorney fees and costs incurred by the Funds in Case No.17 CV 7945. This amount is split between the Welfare, Retiree Welfare and Pension Funds as described in paragraph 1 above.

4. Simultaneously with the execution of this Note, the Company will pay $53,374.86 as the down payment due on February 1, 2018.

5. For twenty-four (24) consecutive months commencing on March 1, 2018 and ending on February 1, 2020, the Company will pay $14,906.80 per month to the Health and Welfare Fund, $6,477.03 to the Retiree Health and Welfare Fund and $17,908.83 per month to the Pension Fund.

6. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

EXHIBIT
1
tabbies

7. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.

8. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

9. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

11. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

12. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the 23rd day of the January, 2018.

De Graf Concrete Construction, Inc.

By: _____

Title: PRESIDENT

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _____

# GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of JANUARY 18, 2018 by the undersigned, MICHAEL PIRRON, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (the "District Council") and any related ancillary Funds to which De Graf Concrete Construction, Inc. is obligated to pay contributions to by virtue of its Agreement with the District Council and the Funds' respective Agreements and Declarations of Trust (collectively the "Funds").

WHEREAS, De Graf Concrete Construction (the "Company") has agreed to pay a total of $996,398.70 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW THEREFOREWHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. <u>Guaranty of Payment and Indemnification.</u> The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs and including any amount revealed as due and owing in an audit even if the audit is conducted after the Note is paid in full.

2. <u>Continuing Guaranty.</u> This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. <u>Waivers.</u> Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

1



EXHIBIT
2

4. <u>Subrogation.</u> Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. <u>Independent Obligations.</u> The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. <u>Acceleration.</u> In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. <u>Effect of Bankruptcy.</u> This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. <u>Termination.</u> This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. <u>The Company's Financial Condition.</u> The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. <u>Expenses.</u> The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. <u>Delay, Cumulative Remedies.</u> No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. <u>Binding Effect.</u> This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

2

13. <u>Default.</u> The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

(a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

<u>Michael Pirron</u>
<u>300 Alderman Ave.</u>
<u>Wheeling, IL 60090</u>

In Case of the Funds:

Collection Counsel
Ryan Liska
Laborers Pension & Welfare Fund
Sub Office
111 W Jackson Blvd
Suite 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

3

16. Additional Waivers. Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. Severability. If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. Applicable Law; Venue. This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. Time is of the Essence. Time is of the essence of this Guaranty as to the performance of the undersigned.

20. Death of a Guarantor. In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

Michael C. Pirron
Print name

Signature

Social Security Number

Date: 01·19·18

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

Michael Pirron

Dated: 01·19·18

4

NG

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LABORERS' PENSION FUND, et al.,  )
                    Plaintiffs,  )
                       )
     v.                    )
                       )
De GRAF CONCRETE CONSTRUCTION,  )
INC., an Illinois corporation, and MICHAEL  )
PIRRON, individually,  )
                    Defendants.  )

Case No. 17 C 7945

# FILED

Judge Gettleman

**JAN 25 2018**

Judge Robert W. Gettleman
United States District Court

### AGREED STIPULATION TO DISMISS

NOW COME Plaintiffs Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds, by and through their attorney, G. Ryan Liska, and hereby file this Notice of Voluntary Dismissal, and Defendants DeGraf Concrete Construction, Inc. and Michael Pirron, and hereby submit the Parties' Agreed Stipulation to Dismiss. In support of this Stipulation, the Parties state as follows:

1.    The parties have reached settlement pursuant to the terms of a Settlement Agreement. Pursuant to the settlement, the Funds agree to dismiss this matter without prejudice and with leave to reinstate on or before February 18, 2020.

2.    Absent any motion filed on or before February 18, 2020, the Parties respectfully request that this matter be dismissed with prejudice on February 19, 2020.

                    Respectfully submitted,

January 25, 2018              Laborers' Pension Fund, et al.

                    By:  /s/ G. Ryan Liska



EXHIBIT
**3**



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LABORERS' PENSION FUND, et al.,      )
              Plaintiffs,    )     Case No. 17 C 7945
        v.                 )
                          )     Judge Gettleman
De GRAF CONCRETE CONSTRUCTION,   )
INC., an Illinois corporation, and MICHAEL   )
PIRRON, individually,             )
               Defendants.    )

## DISMISSAL ORDER

This matter, having come to be heard on the parties' Agreed Stipulation to Dismiss, due

notice having been given, IT IS HEREBY ORDERED:

This matter is dismissed without prejudice and with leave to reinstate on or before

February 18, 2020. Absent the filing of any motions, the dismissal will become with prejudice on

February19, 2010.

ENTER:

The Honorable Robert W. Gettleman
United States District Court Judge

Dated: January 25, 2018

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND, LABORERS' )
WELFARE FUND OF THE HEALTH AND )
WELFARE DEPARTMENT OF THE )
CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, THE CHICAGO )
LABORERS' DISTRICT COUNCIL RETIREE )
HEALTH AND WELFARE FUND and )
CATHERINE WENSKUS, not individually, but )
as Assistant Administrator of the Funds, )
                                         )
                    Plaintiffs,          )        Case No.: 17-cv-7945
        v.                               )
                                         )        JUDGE GETTLEMAN
DE GRAF CONCRETE CONSTRUCTION,           )
INC., an Illinois corporation, and MICHAEL )
PIRRON, individually,                    )
                    Defendants.          )

## AFFIDAVIT OF JOSEPH GILLERAN

JOSEPH GILLERAN, being first duly sworn on oath, deposes and states as follows:

1.      I am a Field Representative employed by the Laborers' Pension Fund and the

Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago

and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above-

referenced action.  My responsibilities include oversight of the collection of amounts owed by De

Graf Concrete Construction, Inc. (hereinafter "De Graf" or the "Company").  This Affidavit is

submitted in support of the Laborers' Funds' Motion to Reinstate and Confess Judgment.  I have

personal knowledge regarding the statements contained herein.

2.      On January 23, 2018, the Company signed an Installment Note ("Note") in

settlement of this case to pay the balance of a prior Installment Note and contributions that



EXHIBIT
4

became due during the term of the first Installment Not on which the Company defaulted on. A true and accurate copy of the Note is attached hereto as Exhibit A-1. Simultaneously with the execution of the Note, Defendant Michael Pirron, the President of De Graf, entered into a Guaranty of Payment and Indemnification Agreement ("Guaranty") agreeing to personally guaranty the amounts due and owing on the Note. A true and accurate copy of the Guaranty is attached hereto as Exhibit A-2.

3.     The Company is in default on the Note. Specifically, the Company failed to submit timely benefit contributions for December 2017 as required under the terms of the Collective Bargaining Agreement, the Funds' respective Agreement and Declarations of Trust and Paragraph 9 of the Note. The Company has also failed to submit payment of the Installment Note due on March 1, 2018 in accordance with Paragraph 5 of the Note. Under the terms of the Note and Guaranty, the Company and Michael Pirron owe $943,023.84 in past due and accelerated payments due on the Note.

FURTHER AFFIANT SAYETH NOT.

_____
JOSEPH GILLERAN

Subscribed and sworn to before me
this _____5_____ day of March 2018.

_____
Notary Public

"OFFICIAL SEAL"
SUSAN M. DIFORTI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/05/2020

2

## INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and Do Graf Concrete Construction, Inc. (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the balance of prior note covering August 2016, December 2016 through February 2017 as well as monthly contributions that become due during the pendency of the first note for the months of August through October 2017, The Parties now wish to enter into this Note arrangement covering all the aforementioned liabilities plus liquidated damages, accumulated liquidated damages, interest, attorney fees and costs that the Parties admit is due and owing.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the balance of prior note covering August 2016, December 2016 through February 2017 as well as dues contributions that become due during the pendency of the first note for the months of August through October 2017. The Parties now wish to enter into this Note arrangement covering all the aforementioned liabilities plus liquidated damages, accumulated liquidated damages, interest, attorney fees and costs that the Parties admit is due and owing.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds,

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $357,763.20 to the Health and Welfare Fund (comprised of $261,841.03 in delinquent contributions, $52,984.71 in liquidated damages, $968.66 in attorney's fees and costs and $41,968.80 in interest) (based on an interest rate of 12%). The Company will pay $155,648.72 to the Retiree Health and Welfare Fund (comprised of $112,938.06 in delinquent contributions, $23,353.33 in liquidated damages, $940.17 in attorney's fees and costs and $18,217.16 in interest). The Company will also pay $429,811.92 to the Pension Fund (comprised of $314,491.24 in delinquent contributions, $63,884.62 in liquidated damages, $940.17 in attorney's fees and costs and $50,495.89 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 4 and 5.

2. The Company will also pay $11,285.64 to the Training Fund (comprised of $9,234.50 in delinquent contributions, $1,846.90 in liquidated damages and $204.24 in interest), $1,719.92 to the CCA Fund (comprised of $1,532.84 in delinquent contributions, $153.28 in liquidated damages and $33.80 in interest), $1,504.93 to the LECET Fund (comprised of $1,341.24 in delinquent contributions, $134.12 in liquidated damages and $29.57 in interest), $3,654.84 to the LDCMC Fund (comprised of $3,257.29 in delinquent contributions, $325.73 in liquidated damages and $71.82 in interest) and $35,209.53 in union dues (comprised of $30,641.69 in delinquent contributions and $4,567.84 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed along with the amounts due in paragraph 5.

3. The Company will also pay the Funds or the sum of $2,849.00 representing attorney fees and costs incurred by the Funds in Case No. 17 CV 7945. This amount is split between the Welfare, Retiree Welfare and Pension Funds as described in paragraph 1 above.

4. Simultaneously with the execution of this Note, the Company will pay $53,374.86 as the down payment due on February 1, 2018.

5. For twenty-four (24) consecutive months commencing on March 1, 2018 and ending on February 1, 2020, the Company will pay $14,906.80 per month to the Health and Welfare Fund, $6,477.03 to the Retiree Health and Welfare Fund and $17,908.83 per month to the Pension Fund.

6. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.


EXHIBIT
A-1

7. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.

8. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, all amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

9. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

11. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

12. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the 23rd day of the January, 2018.

De Graf Concrete Construction, Inc.

By: _____

Title: PRESIDENT

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _____

# GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of JANUARY 18, 2018 by the undersigned, MICHAEL PIRRON, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (the "District Council") and any related ancillary Funds to which De Graf Concrete Construction, Inc. is obligated to pay contributions to by virtue of its Agreement with the District Council and the Funds' respective Agreements and Declarations of Trust (collectively the "Funds").

WHEREAS, De Graf Concrete Construction (the "Company") has agreed to pay a total of $996,398.70 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantor executes this Guaranty: and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note:

NOW THEREFOREWHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. <u>Guaranty of Payment and Indemnification.</u> The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs and including any amount revealed as due and owing in an audit even if the audit is conducted after the Note is paid in full.

2. <u>Continuing Guaranty.</u> This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. <u>Waivers.</u> Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

1



EXHIBIT
A·2

4. Subrogation. Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. Independent Obligations. The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. Acceleration. In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. Effect of Bankruptcy. This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. Termination. This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. The Company's Financial Condition. The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. Expenses. The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. Delay, Cumulative Remedies. No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. Binding Effect. This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

2

13. <u>Default.</u> The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

(a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

Michael Pirron
300 Alderman Ave.
Wheeling, IL 60090

In Case of the Funds:

Collection Counsel
Ryan Liska
Laborers Pension & Welfare Fund
Sub Office
111 W Jackson Blvd
Suite 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

3

16. Additional Waivers. Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. Severability. If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. Applicable Law; Venue. This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. Time is of the Essence. Time is of the essence of this Guaranty as to the performance of the undersigned.

20. Death of a Guarantor. In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

Michael C. Pirron
Print name

_Signature_
Signature

_____
Social Security Number

Date: 01.19.18

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

_____
Michael Pirron

Dated: 01.19.18

4

| From: | Ryan Liska |
|-------|------------|
| Sent: | Monday, February 19, 2018 2:24 PM |
| To: | 'Mike Pirron' |
| Subject: | Notice of Default |
| Attachments: | 201802191516.pdf |

Mike

Please see attached letter requesting the Company paid the December 2017

Ryan

**G. Ryan Liska**
**Office of Fund Counsel**
**111 W. Jackson, Suite 1415**
**Chicago, IL 60604**
**Tel: 312-692-0354**
**Fax: 312-692-1489**

EXHIBIT
5



**LABORERS' PENSION FUND and HEALTH and WELFARE DEPARTMENT of the CONSTRUCTION and GENERAL LABORERS' DISTRICT COUNCIL of CHICAGO and VICINITY and CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH and WELFARE FUND**

MAIN OFFICE
11465 CERMAK ROAD
WESTCHESTER, ILLINOIS 60154-5768
Telephone: (708) 562-0200
www.chicagolaborersfunds.com

CHICAGO OFFICE
111 W. JACKSON BLVD., SUITE 1415
CHICAGO, ILLINOIS 60604-3868
Telephone: (312) 692-1540
Fax: (312) 692-1489

*From the Office of Fund Counsel*

February 19, 2018

Michael Pirron
300 Alderman Avenue
Wheeling, IL 60090

Re:     *Laborers' Pension and Welfare - De Graf Concrete*
        *Construction, Inc.*
        *Notice of Promissory Note Default*

Dear Mike:

This letter is written for purposes of providing notice to you and DeGraf Concrete ("Company") that you and the Company are in default of the terms and conditions of the Promissory Note and Guaranty of Payment and Indemnification.

On January 23, 2018 you executed a Promissory Note and Guaranty of Payment and Indemnification which obligated the Company to remain current on the payment of its monthly fringe benefit and union dues reports during the pendency of the Note term. By virtue the Company failing to timely submit and pay its December 2017 monthly reports, the Company is in default. By virtue of you executing the Guaranty of Payment and Indemnification, the Note and monthly report liability extends to you personally as well.

In the event the Company does not cure the default within ten (10) business days, the Funds will exercise its rights to accelerate and collect all amounts due under the Note plus all attorneys' fees incurred as a result of the default. In the event you have any questions feel free to contact me.

Very truly yours,

LABORERS' PENSION AND WELFARE FUNDS

G. Ryan Liska
GRL/kt

**BOARD OF TRUSTEES**

*Administrator*
CATHERINE WENSKUS

*Secretary*
DAVID H. LORIG

**PENSION FUND**

*For Labor*
ANTHONY CANTONE
JAMES P. CONNOLLY
PAUL P. CONNOLLY
SHAWN FITZGERALD
CHARLES V. LOVERDE, III

*For Employers*
CLIFTON M. HORN
KAREN ELIN JOHNSON
ROBERT G. KRUG
DAVID H. LORIG
GARY LUNDSBERG
LEWIS D. SHAPIRO

**WELFARE FUND**

*For Labor*
JAMES P. CONNOLLY
MARTIN T. FLANAGAN
RICHARD KUCZKOWSKI
CHARLES V. LOVERDE, III
SCOTT PAVLIS

*For Employers*
JULIE CHAMBERLIN
CHARLES J. GALLAGHER
CLIFTON M. HORN
DAVID H. LORIG
DENNIS P. MARTIN
ANTHONY J. RICCARDI

**RETIREE WELFARE FUND**

*For Labor*
JAMES P. CONNOLLY
MARTIN T. FLANAGAN
RICHARD KUCZKOWSKI
CHARLES V. LOVERDE, III
SCOTT PAVLIS

*For Employers*
JULIE CHAMBERLIN
CHARLES J. GALLAGHER
CLIFTON M. HORN
DAVID H. LORIG
DENNIS P. MARTIN
ANTHONY J. RICCARDI

**EMPLOYER PARTICIPANTS –**
Builders' Association, Employing Plasterers' Association, Underground Contractors' Association, Mason Contractors' Association, Concrete Contractors' Association, Wrecking Contractors, Concrete Products Employers, Lake County Illinois Employers, Illinois Road Builders Association, Bridge and Highway Structural Builders; i.e. all those who employ Laborers Engaged in the Building and Construction Industry.